UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYNN TYRONE PATTON,

Plaintiff,

v.

ANDREW SAUL, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant.
_____________________________ /

Case No. 18-10537

Stephanie Dawkins Davis
United States District Judge

**OPINION AND ORDER**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF No. 16, 18)**

# I. PROCEDURAL HISTORY

## A. Proceedings in this Court

On February 14, 2018, Plaintiff Lynn Tyrone Patton filed this lawsuit. (ECF No. 1). Presently before the court are cross-motions for summary judgment, which the parties filed on July 8, 2019 (Patton) and August 7, 2019 (Commissioner). (*See* ECF Nos. 16, 18).

B. Procedural History

On December 12, 2014, Patton filed an application for supplemental security income, alleging disability beginning November 1, 2014. (Tr. 25).[1] The State Agency denied his claim at the initial level on May 13, 2015. (Tr. 120-123). Patton requested a hearing, and his matter was heard in Detroit, MI before Administrative Law Judge Patrick J. MacLean ("the ALJ"). (Tr. 25-36, 44). On December 6, 2016, the ALJ issued a decision denying Patton benefits. (*Id.*) The Appeals Council denied Patton's request for review on December 18, 2017. (Tr. 1-4).

For the reasons set forth below, the court **DENIES** plaintiff's motion for summary judgment, **GRANTS** defendant's motion for summary judgment, and **AFFIRMS** the findings of the Commissioner.

## II. FACTUAL BACKGROUND

Patton was born on May 8, 1969 and was 45 years old at the time of his alleged disability onset date (November 1, 2014). (Tr. 35). He has a high school education and no past relevant work. (Tr. 34-35). At the hearing, Patton testified that he lives in a three-story apartment with his girlfriend. (Tr. 46-47, 49). His adult son has also lived in the apartment "on and off." (Tr. 49).

[1] The Administrative Record appears on the docket at entry number 11. All references to this record are identified as "Tr."

The ALJ applied the five-step disability analysis to Patton's claims and found at step one that he did not engage in any substantial gainful activity since December 12, 2014 (the application date). (Tr. 27). At step two, the ALJ found that Patton had the following severe impairments: bilateral knee osteoarthritis, alcohol dependence,[2] lumbar degenerative disc disease, and depression. (Tr. 27-28). At step three, the ALJ found that Patton did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations. (Tr. 28-30). The ALJ determined that Patton has the residual function capacity ("RFC") to perform sedentary work, except that he can lift up to 10 pounds occasionally with a sitting or standing option at will every 15 minutes; occasionally climb ladders, ropes, and scaffolds; occasionally climb ropes and stairs; frequently balance, occasionally stoop, crouch, kneel, and crawl; occasionally reach overhead bilaterally; and frequently handle and finger bilaterally, with avoidance of all exposure to excessive vibration and only occasional exposure to excessive environmental irritants such as fumes, odors, dusts, and gases. (Tr. 30-34). The ALJ also found that Patton's work must be limited to simple, routine, repetitive tasks employed in a low stress job, with brief superficial interaction with the public, coworkers, and supervisors. (*Id.*) At step

---

[2] At the time the ALJ issued his decision, the Listings included Listing 12.09, which pertained to substance abuse disorders. 20 C.F.R. pt. 404, subpt. P, app. 1 at §12.00C (effective September 29, 2016 to January 16, 2017).

four, the ALJ determined that Patton had no past relevant work. (Tr. 34). At step five, the ALJ concluded that there were a significant number of jobs in the national economy that Patton could perform, including addressing clerk, final assembler, and nut sorter, and, thus, he was not under a disability from the date that he filed the application (December 12, 2014) through the date of the decision (December 6, 2016). (Tr. 35-36).

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If a claimant does not obtain relief during the administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited

in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528,

535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty-stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, 416.920. Essentially, the ALJ must determine whether: (1) the plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform. *Id*. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step

without a finding rejecting the existence of disability, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g); 20 C.F.R. § 416.960(c).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C. Walking Aid

1. Overview of the Parties' Arguments

Patton first argues that the ALJ's decision is not supported by substantial evidence because he failed to ask hypothetical questions that addressed his need for a walking aid. (ECF No. 16, PageID.737).

In response, the Commissioner argues that substantial evidence supports the ALJ's finding that Patton did not require a limitation for use of a cane. (ECF No. 18, PageID.752-755). In the alternative, the Commissioner argues that the evidence was "at best ambivalent" as to whether Patton needed a cane. (*Id.* at

PageID.754). But, even if Patton did require a cane, the Commissioner argues that the ALJ's RFC finding limited Patton to a reduced range of sedentary work, thus accommodating any need for a cane. (*Id.* at PageID.754).

2. Legal Standard

Although Patton characterizes his argument as a Step Five issue, stated more accurately, he is attempting to refute the RFC finding via a purported Step Five error. *See Kirchner v. Colvin*, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed."); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999) ("To require the Commissioner to prove a claimant's RFC at step five is essentially to partially shift the burden of proof required of a claimant at step four to the Commissioner."). This is so because the ALJ's hypothetical to the vocational expert aligned with the RFC assessed. Thus, Patton's qualm is not with the hypothetical per se, but rather with the omission of his claimed need for a cane in the RFC. The court therefore addresses Patton's argument as such.

"To find [that] a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is

needed." Soc. Sec. Rul. 96-9p, 1996 WL 374185, at *7. When a cane is not a necessary device for a claimant's use, it cannot be considered an exertional limitation that reduces his ability to work. *Carreon v. Massanari*, 51 Fed. Appx. 571, 575 (6th Cir. 2002). And, "[a]bsent any medical evidence that use of a cane was necessary, the ALJ [is] not required to include that factor in his RFC finding or his hypothetical question, and the Plaintiff is not entitled to remand on that basis." *Blye v. Barnhart*, 2004 WL 2216533, at *8 (E.D. Mich. Aug. 3, 2004).

3. Analysis

The undersigned finds that substantial evidence supports the ALJ's finding that Patton did not need to use a cane; thus, the ALJ was not required to include this factor in his RFC finding. *See Carreon v. Massanari*, 51 Fed. Appx. 571, 575 (6th Cir. 2002); *Blye v. Barnhart*, 2004 WL 2216533, at *8 (E.D. Mich. Aug. 3, 2004). Therefore, Patton is not entitled to remand on this basis.

The ALJ correctly noted that none of Patton's treating sources (Drs. Gabr and Hakki) said that he needed to use an assistive device in their opinions. (Tr. 33-34). Indeed, Dr. Gabr stated in his opinion that Patton could walk without stopping for 15 minutes. (Tr. 309); (*see also* Tr. 671) (same). Similarly, Dr. Hakki opined that Patton could walk for one hour non-stop. (Tr. 460); (*see also* Tr. 677) (same). Moreover, in his disability report to the Agency, Patton did not check the box indicating that he used a cane, but he did check the box indicating that he used a

brace; on the Agency's form, the box for "cane" is placed directly above the box for "brace." (Tr. 266). Furthermore, as the Commissioner points out, Patton's pre-surgery assessment indicated that he wore a knee brace but made no mention of a cane. (Tr. 617). And, during a consultative examination dated April 17, 2015, the physician indicated that Patton was able to walk without his cane and declined to check the box that Patton "Needed [a cane], Would Fall Without Aid, [and that the cane was] Clinically Req'd." (Tr. 385, 387).

The record does also contain some evidence supporting the idea that Patton needed to use a cane, but it is insufficient to detract from the evidence relied upon by the ALJ. For example, during that same April 2015 consultative examination, the physician also indicated that "clinical evidence support[s] the need for [a] walking aid . . . [to] "Reduce Pain" and stated that Patton "gets around with a cane." (Tr. 384, 387). Additionally, the record contains a note indicating that Patton was prescribed a cane on October 19, 2015. (Tr. 438). These facts notwithstanding, substantial evidence supports the ALJ's determination that Patton did not need a cane, as indicated by the record evidence discussed above. As such, it cannot be overturned. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (The ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ.").

Furthermore, even if Patton needed to use a cane, such a limitation would seem to be accounted for in the ALJ's restricting him to a range of sedentary work. *See Ford v. Comm'r of Soc. Sec.*, 2015 WL 1119962, at *2 (E.D. Mich. Mar. 11, 2015) ("As to plaintiff's claim that the RFC should have noted that plaintiff needed to use a cane, it is unclear that such a limitation was not already accounted for in the determination that plaintiff was limited to 'sedentary' work."). Plus, as the Commissioner points out, there is nothing in the record to indicate that he would be unable to use his free hand to carry objects weighing less than 10 pounds. (Tr. 309; 460) (Drs. Gabr and Hakki's opinions, respectively, indicating that Patton can lift and carry 5-10 pounds regularly); *see also* Soc. Sec. Rul. 96-9p, 1996 WL 374185, at *7 ("Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand."). Thus, because the ALJ's RFC would accommodate one who uses a cane, Patton is not entitled to remand on this basis.

D. Alcohol Dependence

1. Overview of the Parties' Arguments

Patton argues that the ALJ failed to assess his limitations under the paragraph B and C criteria because "[t]he RFC presented to the Vocational Expert does not discuss the impact of Plaintiff's alcoholism, combined with his physical restrictions on his ability to perform substantial gainful activity." (ECF No. 16, PageID.741). He does not elaborate any further on this argument.

In response, the Commissioner argues that the court should find that Patton has waived this argument, as it is a perfunctory allegation of error. (ECF No. 18, PageID.755). In the alternative, the Commissioner argues that Patton's assertion that the ALJ failed to "discuss the impact of Plaintiff's alcoholism" is without merit, because the ALJ repeatedly acknowledged that Patton suffered from alcohol dependence, relied on the opinion of the examining psychiatrist who diagnosed the condition, adopted the recommended limitations in full, and applied physical limitations to account for Patton's alcohol dependence. (*Id.* at PageID.757-759) (citing Tr. 27-34, 391-393).

2. Analysis

The court agrees with the Commissioner that Patton's argument is undeveloped. Indeed, Patton simply makes a conclusory statement and offers no discussion of the substance of the ALJ's opinion. Thus, he has waived this

argument. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."). However, for completeness of the record, the undersigned will address this argument.

To the extent Patton attempts to make an argument challenging the ALJ's consideration of his alcohol dependence, it is without merit as the ALJ discussed Patton's alcohol use in determining the RFC. In fact, the ALJ expressly imposed limitations on reaching, handling, and fingering in part *due to his alcohol dependence*. (Tr. 28, 34). In making this determination, the ALJ credited Patton's testimony that he drinks alcohol daily (Tr. 31) and that he continued to drink even after being advised by his doctors to stop (Tr. 34). And in terms of his mental functioning, the ALJ also limited Patton to simple, routine, and repetitive tasks in a low stress job in part *due to Patton's alcohol dependence*. (Tr. 33).

In addition, the ALJ considered Patton's alcohol dependence in assessing the paragraph B criteria.[3] Specifically, in social functioning, the ALJ found that

---

[3] Under the rule in place at the time of the ALJ's decision, a claimant satisfied the paragraph B criteria if he showed at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. pt. 404, subpt. P, app. 1 at §12.00C (effective September 29, 2016 to January 16, 2017).

Patton has moderate difficulties in part because Dr. Gummadi, the consultative examiner, opined that he should be restricted to work that involves brief, superficial interactions with coworkers, supervisors, and the public *due to his alcohol dependence*. (Tr. 29). And, in concentration, persistence, or pace, the ALJ found that Patton has moderate difficulties in part because of *alcohol dependence*. (*Id.*) As to the paragraph C criteria, it is true that the ALJ did not expressly mention Patton's alcohol dependence. But, as noted, his alcoholism is discussed in other parts of the opinion and the ALJ fashioned both physical and mental limitations based, in part, on this factor. Further, Patton does not articulate how his alcohol dependence would have changed the ALJ's findings that he appeared at the hearing by himself; was able to function independently, answer questions, and provide testimony; and did not seek ongoing mental health treatment during the relevant period. (Tr. 29). Because Patton bears the burden of proof at Step 3, the undersigned does not find this argument to be persuasive. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008); *see also Turvey v. Comm'r of Soc. Sec.*, 2013 WL 3271194 (E.D. Mich. June 27, 2013) (rejecting the plaintiff's challenge to the RFC assessment where he did not "specify any additional work-related functional limitations the ALJ should have, but did not, include in the RFC assessment resulting from his pain or mental limitations.").

## IV. ORDER

For the reasons set forth above, the court **DENIES** plaintiff's motion for summary judgment, **GRANTS** defendant's motion for summary judgment, and **AFFIRMS** the findings of the Commissioner.

**IT IS SO ORDERED**.

Date: April 28, 2020

s/Stephanie Dawkins Davis
Stephanie Dawkins Davis
United States District Judge